UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| APPLE KING, LLC, a Washington Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a Delaware Corporation, and JOHN DOES 1-99,<br><br>Defendants. | NO. 1:24-CV-3181-TOR<br><br>ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT are Defendant BNSF Railway Company's Motion for Partial Summary Judgment (ECF No. 30) and Motion to Amend/Correct Reply Memorandum (ECF No. 43). Plaintiff requested oral argument, however, after reviewing the record and files herein, the Court is fully informed and does not find that oral argument is necessary. Therefore, these matters were submitted for consideration without oral argument. For the reasons discussed below, BNSF Railway Company's Motion to Amend/Correct Reply Memorandum (ECF No. 43)

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

is **GRANTED** and Motion for Partial Summary Judgment (ECF No. 30) is **GRANTED IN PART**.

## BACKGROUND

This case arises out of a dispute over ownership of a two-acre parcel of land located in the City of Union Gap, Yakima County, Washington.  On September 24, 2013, Apple King, LLC ("Apple King"), entered into a Definite Term Lease for Land agreement (the "Lease") with BNSF Railway Company ("BNSF") to lease real property from BNSF identified as Yakima County Assessor Parcel No. 191208-23901 (the "Property").  ECF Nos. 31 at ¶¶ 5,12, 36 at ¶ 14.  The Lease included a natural expiration date of September 23, 2023.  ECF No. 31 at ¶ 14. The Property is adjacent to railroad tracks owned and maintained by BNSF including a spur from the main line tracks.  ECF No. 31 at ¶ 10.  BNSF is successor to the Northern Pacific Railway Company.  ECF No. 31 at ¶ 1.  Apple King is a multilevel grower, packer and shipper of fruit products and owns several cold storage facilities that extend onto the Property.  ECF Nos. 35, at 4, 36 at ¶¶ 17,18,19, 40 at ¶ 5.

Two days prior to the natural expiration of the Lease, the parties agreed to extend the expiration date by one week to September 30, 2023.  ECF Nos. 31 at ¶¶ 14,15, 32 at 6.  Upon the expiration of the Lease, Apple King remained on the Property.  ECF No. 31 at ¶ 16.  Section 23 of the Lease provides that where Lessee

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2

fails to surrender the property upon the date of expiration, and "Lessor does not consent in writing to Lessee's holding over, then such holding over will be deemed a month-to-month tenancy."  ECF No. 1-1 at 41.  On July 23, 2024, BNSF sent a letter to Apple King notifying that effective August 31, 2024, BNSF was formally terminating the Lease and ordered Apple King to remove any improvements from the Property by September 30, 2024.  ECF No. 31 at ¶ 18.  Apple King did not relinquish possession of the Property, nor remove any of its structures by the September 30, 2024 deadline.  *Id.* at ¶ 19.  BNSF thereafter served Apple King with a Notice of Unlawful Detainer under RCW 59.12.030(2).  *Id.* at ¶ 20.

On November 1, 2024, Apple King filed its Complaint with the Yakima County Superior Court alleging that BNSF does not have any ownership interest in the Property and that Apple King and its predecessors have full right title and interest in and to the Property pursuant to an 1873 patent from the United States to Frederick Barker ("Barker Patent"), Apple King's alleged predecessor-in-interest. ECF Nos. 1-1 at ¶¶ 66,67, 35 at 5.  Apple King asserts several claims for relief including declaratory judgment regarding the ownership of the Property, injunctive relief, quiet title, and other state law claims.  *Id.* at ¶¶ 71-116.  BNSF subsequently removed the action to this Court and filed its Answer with counterclaims of ejectment, unlawful detainer, declaratory judgment, breach of lease, and quiet title based on adverse possession.  ECF No. 6 at ¶¶ 21-53.

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

BNSF now brings this motion for partial summary judgment as to all of Apple King's claims and BNSF's counterclaims other than the extent of the amount of rent owed under its breach of lease claim.  ECF No. 30 at 3.  Apple King requests that the Court deny BNSF's motion for summary judgment and instead grant summary judgment in Apple King's favor as to its claims.  ECF No. 35 at 2.[1]

## SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible

[1]    BNSF objects to the length of Apple King's response to BNSF's motion.  ECF No. 41 at 3 n.2.  The local rules dictate that dispositive motions and response memoranda shall not exceed 20 pages without prior Court approval and must be double spaced.  LCivR 7(f), 10(d).  Apple King's response both exceeds 20 pages without prior approval and is not double spaced.  The Court will consider the entirety of Apple King's response for the purposes of this motion but warns Apple King that the Court will decline to do so for any future briefings that do not comply with the local rules.

evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

BNSF contends that its ownership of the Property predates the Barker Patent pursuant to the right of way granted to its predecessor, the Northern Pacific

Railroad Company ("Northern Pacific"), by the Northern Pacific Land Grant Act of July 2, 1864, 13 Stat. 365 (ECF No. 32 at 37-44).  ECF No. 30 at 8-9.  Apple King responds that BNSF cannot prove it has ownership rights by competent admissible evidence and even if it could, it has abandoned the Property.  ECF No. 35 at 8-9.  As such, Apple King argues the land reverts back to those claiming under the Barker Patent or the City of Union Gap.  *Id.* at 9.

**A. The 1864 Act conveyed the Property to BNSF**

The 1864 Act (the "Act") authorized Northern Pacific to "lay out, locate, construct, furnish, maintain, and enjoy a continuous railroad" from Lake Superior to some point on the Puget Sound.  13 Stat. 365, § 1.  Section 2 of the Act granted Northern Pacific, its successors and assigns, a right of way on which to build the railroad:

> And be it further enacted, That the right of way through the public lands be, and the same is hereby, granted to said "Northern Pacific Railroad Company," its successors and assigns, for the construction of a railroad and telegraph as proposed; . . . Said way is granted to said railroad to the extent of two hundred feet in width on each side of said railroad where it may pass through the public domain.

*Id.* § 2.

BNSF contends that Northern Pacific constructed the railroad pursuant to its authority granted by the Act and in 1884 filed a "Map of Definite Location" (the "Map") showing the precise location of the tracks and right of way, which included the Property.  ECF No. 30 at 7.  BNSF argues the Map demonstrates that the

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 6

railroad was constructed in the area of the Property pursuant to the Act and that title relates back to July 2, 1864 even though the Map was not filed until 1884. *Id.*

Apple King responds that BNSF cannot prove that it obtained the Property at issue by virtue of the Act and has not shown any competent evidence of its ownership rights to the Property such as a deed. ECF No. 35 at 8. Apple King asserts that BNSF's provided declaration from its counsel, Todd Reuter, is not admissible evidence. *Id.* at 8. However, Apple King also does not contest that BNSF acquired "large swaths of land across the country" in limited fee with right of reverter. *Id.* at 8-9. Nor does Apple King contest that if the Property was part of the land grant pursuant to the Act, BNSF would have superior title over the Barker Patent. *Id.* at 8-9. Thus, the issue before the Court is whether the Property falls within the right of way conveyed by the Act.

Apple King's argument rests on its assertion that Pacific Northwest obtained grants of land from Congress but also from private transfers and deeds to adverse possession and easements negotiated, and BNSF cannot produce a legal document demonstrating its inception of ownership. ECF No. 36 at ¶ 13. BNSF replies that the Act itself conveyed title to BNSF and is functionally the "deed," with the recorded map of definite location establishing the location of the railroad corridor. ECF No. 41 at 4. The Court agrees with BNSF that it holds superior title to the Property.

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7

Congress conveyed a property interest to Northern Pacific, now BNSF, through the Act itself.  *See N. Pac. Ry. Co. v. Townsend*, 190 U.S. 267, 271 (1903) ("[I]t must be held that the fee passed by the grant made in § 2 of the act of July 2, 1864."); *Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. 93, 102 (2014) ("This Court has previously held that pre-1871 statutes, granting rights of way accompanied by checkerboard land subsidies, conveyed to the railroads 'a limited fee, made on implied condition of reverter.' ") (quoting *Townsend*, 190 U.S. at 271)).  The Map demonstrates that the definite location of the railroad through Yakima County was surveyed pursuant to the Act.  ECF No. 32 at 46-47. "The filing of such a map of definite location of a railroad determines the right of the railroad company to the land under the land-grant acts of congress." *N. Pac. Ry. Co. v. De Lacey*, 174 U.S. 622, 626 (1899); *see also N. Pac. R. Co. v. Murray*, 87 F. 648, 649 (9th Cir. 1898) ("[T]he grant becomes definite when the line of road is definitely fixed, and a plat thereof is filed in the office of the commissioner of the general land office."); *H.A. & L.D. Holland Co. v. N. Pac. Ry. Co.*, 214 F. 920, 923-24 (9th Cir. 1914) ("[T]he construction of the road was not a condition precedent to the transfer of title, but title passed upon the selection of a definite route, attended with notice to the government of such selection, through the filing of the map of definite location.").  And the Court agrees that the date of title relates back to the date of the Act.  *Nielson v. N. Pac. R. Co.*, 184 F. 601, 602 ("All

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

persons acquiring any portion of the public lands after the passage of the act in question took the same subject to the right of way conferred by it for the proposed road." (quoting *St. Joseph & Denver City R. Co. v. Baldwin*, 103 U.S. 426, 430 (1880))); *Murray*, 87 F. at 649 ("It is undisputed that the right of way, as thus ascertained, was vested in the company as of the date of the act of congress . . . .").

Apple King does not challenge the authenticity of the Map or that the Property is within the corridor as displayed on the Map.  Moreover, the Map may be properly authenticated as an ancient document.  Fed. R. Evid. 901(b)(8); *see also Orr. v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) ("[A] proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902.").  Therefore, because the Property was a part of the right of way conveyed under the Act, BNSF holds the superior title.

**B.  BNSF has not abandoned the Property**

The parties agree that the Act conveyed to Northern Pacific, and its successors and assigns, a limited fee interest with a right of reverter in the right of way.  ECF Nos. 30 at 13-14, 35 at 9.  The bulk of Apple King's argument rests on the theory that even if BNSF had such an interest to the Property pursuant to the Act, it has since abandoned the Property as demonstrated by BNSF's long-standing conduct and non-use of the Property.  ECF No. 35 at 9.  As such, Apple King

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

contends that the Property reverted back to those claiming under the Barker Patent or the city of Union Gap; neither of which have come forward or asserted any interest in the Property and which Apple King has been adversely possessing for the past twelve years. *Id.*

BNSF argues that the right of way cannot be abandoned through state common law but only by the means as described under the Abandoned Railroad Right of Way Act, 43 U.S.C. § 912. ECF No. 30 at 14-15. BNSF relies on the Ninth Circuit holding in *Vieux v. East Bay Regional Park Dist.*, 906 F.2d 1330, 1337 (9th Cir. 1990) that reversionary rights vest under § 912 where a railroad (1) ceases "use and occupancy" of the rights of way *and* (2) abandonment has been "declared or decreed" by a court or congressional act. BNSF asserts that neither requirement has been met in this case nor can a court issue a declaration of abandonment retroactively. ECF No. 30 at 15-16. BNSF further contends that statutory abandonment additionally requires authorization from the Surface Transportation Board ("STB"), formerly known as the Interstate Commerce Commission ("ICC"), which BNSF argues requires an affirmative application by the railroad to abandon or cease operation of its railroad lines. *Id.* at 16.

Apple King does not dispute the applicability of § 912 but counters that the Court retains authority to declare the Property abandoned even without authorization from STB and the lack of prior decree of abandonment does not

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10

prevent the Court from doing so now.  ECF No. 35 at 11-12.  Apple King argues that BNSF's leasing of the Property is inconsistent with the Act's requirement that the designated right of way be used for railroad purposes or railroad related activities.  *Id.* at 9-10.  Apple King asserts that this contrary conduct combined with the fact that no such rail track or rail activity has occurred within the Property for at least thirty years renders the Property abandoned.  *Id.* at 10-11.

The Court is not persuaded by Apple King's arguments.  On the one hand, Apple King does not appear to dispute the applicability of § 912 in this case or its requirements as held in *Vieux*, yet Apple King does not make arguments of BNSF's abandonment in the context of § 912's requirement that BNSF cease "use and occupancy" of the right of way.  Rather, Apple King focuses on BNSF's use of the Property as being inconsistent with the Act's conditions of conveyance as a basis for abandonment.  This argument is not supported by case law.

Indeed, pursuant to *Townsend*, Pacific Northern, and therefore BNSF's interest in its right of way was "made on an implied condition of reverter in the event the company ceased to use or retain the land for the purpose for which it was granted."  190 U.S. at 271.  However, 43 U.S.C. § 912, enacted twenty years later, set the conditions of abandonment which in pertinent part provides:

> Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad . . . and use and occupancy of said lands for such purposes has ceased or

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11

shall hereafter cease, whether by forfeiture or by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title interest, and estate of the United States in said lands shall, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted . . . .

43 U.S.C. § 912.

In interpreting § 912, the Ninth Circuit in *Vieux* adopted the test that "[i]n order for reversionary rights to vest under § 912, the railroad must 1) cease 'use and occupancy' of the rights of way *and* 2) abandonment must be 'declared or decreed' by a court of competent jurisdiction or congressional act." *Vieux*, 906 F.2d at 1337 (emphasis in original).

The inquiry on whether a railroad has ceased using and occupying a railroad for § 912 purposes is a factual one "guided by the 'plain and apparent meaning of the [statutory] terms,' as well as 'common law principles of abandonment.'" *Avista Corp. Inc. v. Wolfe*, 549 F.3d 1239, 1248 (9th Cir. 2008) (quoting *Vieux*, 906 F.2d at 1340). The common law principles of abandonment focus on the intent to abandon and acts clearly evidencing such an intent. *Id.*

Among the indicia relevant to the "use and occupancy" inquiry are whether railway services have been discontinued, whether the railroad has removed its tracks and other railroad structures, whether it uses the right of way for storage or other railroad purposes such as training exercises, whether maintenance of the line has been discontinued, and whether the railroad continues to pay property taxes on the right of way

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 12

as "operating property." *Id.*

The evidence presented does not suggest any intent by BNSF to abandon the right of way, and therefore the Property, as defined by the plain meaning of § 912 or common law principles of abandonment. While the service spur may no longer be in use, the parties do not dispute that the main track running through the right of way corridor on which the Property is located is still operational. ECF No. 31 at ¶ 10, 36 at ¶¶ 34,36. Apple King does not cite to any authority permitting a piece of the right of way to be decreed abandoned despite the main line still being operational. On the contrary, the Ninth Circuit has previously held that such piecemeal abandonment is not permitted. "The essential question is whether the railroad company, which has always operated its line, could divest itself of its title to the several small strips included within the right of way acquired under the grant of Congress. The answer must be that it could not." *Barnes v. S. Pac. Co.*, 16 F.2d 100, 102 (9th Cir. 1926).

Moreover, even if BNSF could abandon portions of the right of way, there is no evidence of an intent to abandon the Property as the Lease demonstrates by both the very nature of being a lease and the reservation of rights BNSF asserts in the Lease. "If Lessor shall require the Premises for railroad purposes or activities, the Lessor may, in its sole discretion at any time during the Term, terminate the Lease

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 13

upon written notice." ECF No. 32 at 14.

Apple King's reliance on *Washington Securities & Investment Corp. v. Horse Heaven Heights, Inc.*, 132 Wash. App. 188 (2006) in support of its contention that BNSF's position as a "private-for-profit landlord" violates the Act's requirements that the right of way be used for railroad activities is misplaced. The court there concluded that Washington's incidental use doctrine permits a railroad to use its right of way "to conduct not only railroad activities, 'but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad.'" 132 Wash. App. at 202 (quoting *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wash. 2d 253, 273 (2006)). In this case, BNSF's leasing of the Property to Apple King "for the sole and exclusive purpose of operating and maintaining a controlled atmosphere fruit storage warehouse" (ECF No. 32 at 15) would fall within the scope of permissible incidental uses as no evidence put forward suggests it interferes with the operation of the railroad. And to the extent Apple King argues that BNSF lacks authority to grant a lease for third-party use of the Property (ECF No. 35 at 9-10), the court in *Horse Heavens* also explained that by holding a property interest in limited fee, a railroad "may have certain rights to the alienation of its property so long as the transfer results in a use of the right-of-way that is not inconsistent and does not interfere with the operation of the railroad." 132 Wash. App. at 202.

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 14

Reviewing the totality of the facts, no abandonment has occurred and BNSF's limited fee interest in the Property remains.  Additionally, Apple King's leasehold interest in the Property terminated on August 31, 2024.  ECF No. 32 at 12.

To sustain an action of quiet title in Washington, RCW 7.28.010 "requires that a person seeking to quiet title establish a valid subsisting interest in property and a right to possession thereof." *Horse Heavens*, 132 Wash. App. at 195.  "The party with superior title, whether legal or equitable, must prevail." *Id.*  As a holder of superior title to the Property, BNSF must prevail.  Therefore, Apple King's claims for quiet title, unjust enrichment, trespass, fraudulent/negligent misrepresentation, fraudulent inducement, and Consumer Protection Act violations must be dismissed with prejudice.

**C. Issues of fact remain as to BNSF's ejectment counterclaim**

BNSF seeks an order of ejectment against Apple King requiring Apple King to remove any Apple King-owned structures from the Property as required pursuant to the Lease.  ECF No. 6 at ¶ 25.  Apple King argues that the Lease does not require Apple King to remove pre-existing structures, only those improvements made during the term of the Lease.  ECF No. 35 at 15-17.  Apple King further argues that even if the Lease does provide for the removal of the pre-existing improvements, assessment of the *Arnold* factors for fairness demands the Court

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 15

withhold a mandatory injunction and instead convey title to Apple King for fair market value. *Id.* at 17-21. The Court finds that questions of fact remain that prevent an order of ejectment at this time.

The Lease states that "[u]pon the termination of Lessee's tenancy under this Lease in any manner herein provided, Lessee shall relinquish possession of the Premises and shall remove any Lessee Improvements . . . and restore the Premises to substantially the state and environmental condition in which it was prior to the Lessee's use." ECF No. 32 at 25. Section 9(B) defines Lessee Improvements:

> If initial improvements are necessary for Lessee's use of the Premises, Lessee, at Lessee's sole cost and expense, shall, *on or after* the Commencement Date, construct and install such initial improvements to the Premises which are necessary for Lessee's use of the Premises and are acceptable to Lessor in Lessor's sole discretion ("Lessee Improvements").

*Id.* at 18 (emphasis added).

It is undisputed that the structures on the Property at issue were present prior to the Lease commencement date. ECF No. 36 at ¶ 20. "In interpreting all contracts, including leases, [the Court] must look to the parties' objectively expressed mutual intent." *City of Puyallup v. Hogan*, 168 Wash. App. 406, 417 (2012); *see also Washington Pro. Real Est. LLC v. Young*, 190 Wash. App. 541, 549 (2015) ("Our interpretation of a contract can be informed not only by its language but also by its subject matter and objective, all the circumstances

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 16

surrounding its making, and the reasonableness of the respective interpretations advocated by the parties.").

The Lease language raises a question of fact as to what the parties intended regarding the preexisting improvements upon the Lease's termination. As such, the Court's assessment of the *Arnold* factors also turns on factual questions. *Proctor v. Huntington*, 169 Wash. 2d 491, 503 (2010) ("A court asked to eject an encroacher must instead reason through the *Arnold* elements as part of its duty to achieve fairness between the parties."); *Garcia v. Henley*, 190 Wash. 2d 539, 543 (2018) ("[W]hether each *Arnold* element has been met should be analyzed using the 'inherently flexible and fact-specific' equitable power of the court to fashion remedies that do equity." (quoting *Proctor*, 169 Wash. 2d at 503)). Therefore, the Court declines to issue a mandatory injunction ordering Apple King to remove the encroaching structures at this time.

**D. Attorneys' fees and costs**

BNSF moves for reasonable attorney fees and costs pursuant to the Lease. ECF No. 30 at 19-20. "A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). Under RCW § 4.84.330, "where such a contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such a contract or lease, shall be awarded to

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 17

one of the parties, the prevailing party . . . shall be entitled to reasonable attorneys' fees in addition to costs."

Section 43 of the Lease provides that, "If any action at law or in equity is necessary to enforce or interpret the terms of this Lease, the prevailing party shall be entitled to reasonable attorneys' fees, costs, and necessary disbursements in addition to any relief to which it may be entitled."  ECF No. 1-1 at 44.  As BNSF's breach of lease claims remain and questions of fact exist as to whether the Lease requires Apple King to remove the pre-existing structures from the Property, the Court will defer ruling on BNSF's request for attorneys' fees and costs at this time.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. BNSF Railway Company's Motion to Amend/Correct Reply Memorandum (ECF No. 43) is **GRANTED**.

2. BNSF Railway Company's Motion for Partial Summary Judgment (ECF No. 30) is **GRANTED IN PART**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED March 4, 2026.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART DEFENDANT BNSF RAILWAY
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 18